# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE PADILLA, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 5862 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| PATRICK B. PEREZ, DONALD E. KRAMER, COREY HUNGER, JAMES C. LEWIS, JACOB S. WATSON, and JUSTIN H. HUNT, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case arises from events that took place while Plaintiff George Padilla was being held as a pretrial detainee at the Adult Justice Center of Kane County, Illinois (hereinafter, "the Jail"). Padilla has sued Sheriffs of Kane County Patrick Perez and Donald Kramer, as well as Directors of Corrections Corey Hunger and James Lewis (collectively, "the Supervisory Defendants"). He has also sued correctional officers Jacob Watson and Justin Hunt. Each Defendant has been sued in both his individual and official capacities.

In his Third Amended Complaint, Padilla brings federal claims under 42 U.S.C. § 1983 for failure to protect and deliberate indifference to medical needs (Counts I–III), a state law claim for negligence (Count IV), and a state law claim against the Supervisory Defendants for respondeat superior liability (Count V). Defendants have moved to dismiss Counts IV and V and to dismiss Padilla's request

for punitive damages with respect to the same. For the reasons provided herein, Defendants' motion is granted in part and denied in part.

## Factual Background[1]

On February 19, 2014, Padilla was locked inside of a cell in an area of the Jail where correctional officer Watson was on duty. 3d Am. Compl. ¶¶ 14, 23, ECF No. 78. Meanwhile, an inmate named Lopez was mopping up an area of the Jail and had propped open a nearby door. *Id.* ¶ 21. Padilla asked for the door to be closed because cold air was blowing through it. *Id.* ¶ 23. When Watson closed the door in response to Padilla's request, Lopez became angry with Padilla. *Id.* He walked over to Padilla's cell and threatened to burn off his tattoos. *Id.* Intending to make good on this threat, Lopez then walked to a nearby microwave and began heating up a cup of water. *Id.* ¶ 24. Watson heard Lopez's threat and saw him heating the water for use as a weapon, but he "simply smirked and stayed seated at his desk computer" rather than intervening. *Id.* ¶¶ 25–26.

While Lopez continued heating water in the microwave, correctional officer Hunt came to take over Watson's duties. *Id.* ¶ 27. Written policy required all inmates to be locked inside of their cells during correctional officers' shift changes. *Id.* ¶ 16. Contrary to this policy, however, Watson allowed Lopez to remain outside of his cell during the shift change. *Id.* ¶ 18. Also contrary to written policy, Watson did not inform Hunt that Lopez had confronted and threatened Padilla. *Id.* ¶ 29.

---

[1] The following facts are taken from Plaintiff's Third Amended Complaint and are accepted as true on review of Defendants' motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

According to Padilla, these deviations from written policy were part of a broader pattern of favoritism that Watson and other correctional officers frequently showed toward Lopez. *Id.* ¶¶ 19–20, 29.

Once Watson and Hunt completed their shift change, Padilla left his cell and went into a common area. *Id.* ¶ 32. He told Hunt that Lopez had threatened him and was heating water to use as a weapon, but Hunt declined to intervene. *Id.* ¶¶ 30–31. Shortly thereafter, Lopez again confronted Padilla and threw the cup of boiling water onto Padilla's chest, face, and arms. *Id.* ¶ 32. The boiling water caused blistering and severe burns all over Padilla's chest and face. *Id.* ¶¶ 32–33.

Later that day, Padilla was sent to the emergency room, where doctors determined that his burns were so severe that he needed to be transported to the Loyola Burn Center. *Id.* ¶ 34. After spending a night at Loyola, Padilla was sent back to the Jail. *Id.* ¶ 35. The doctor who saw Padilla at Loyola ordered that he be given two tablets of Norco every six hours for the next ten days and that he return to Loyola in seven days for a follow-up visit. *Id.* The doctor warned that if Padilla did not timely return for the follow-up visit, "the wounds could improperly heal and the new skin that was being regenerated could grow into [the] bandages." *Id.*

A few days after returning to the Jail, Padilla's wounds became very painful and began leaking a puss-like discharge. *Id.* ¶ 36. Padilla repeatedly requested medical attention, but Jail staff denied his requests. *Id.* Jail staff also refused to give him the pain medication his doctor had prescribed. *Id.* ¶ 37. Instead, they gave him only Tylenol and Aleve, which were insufficient to abate his pain. *Id.*

On February 27, 2014, seven days after Padilla left the Loyola Burn Center, he requested that he be transported back to Loyola for the follow-up visit as ordered by his doctor. *Id.* ¶ 38. Jail staff refused to transport him, stating that "it was not necessary for him to go back to Loyola." *Id.* Still in extreme pain, Padilla commenced a hunger strike, which finally provoked Jail staff to transport him to Loyola after lunchtime on February 28, 2014. *Id.* ¶¶ 39–40. By then, Padilla's burns had grown into the bandages as his doctor had warned. *Id.* ¶ 41. The doctor therefore had to reopen Padilla's wounds in order to remove his dressing, which caused Padilla further severe pain. *Id.* Padilla alleges that Jail staff's refusal to give him the prescribed medication and to timely transport him to Loyola were part of a broader practice or custom of deliberate indifference to inmates' medical needs. *Id.* ¶¶ 65–66.

**Legal Standard**

A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2). In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded allegations

in the complaint and must draw reasonable inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081.

## Analysis

I. **Count IV: State Law Negligence**

In Count IV, Padilla brings a claim for negligence under Illinois law. This claim is premised both upon Defendants' failure to protect Padilla from other inmates as well as upon the Supervisory Defendants' failure to provide Padilla with adequate medical care. 3d Am. Compl. ¶¶ 74–76. Defendants contend that Padilla's negligence claim should be dismissed for three reasons. First, they argue that the claim is barred by Illinois's statute of limitations. Second, they argue that they are immune from liability for negligence under Illinois's Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/1 *et seq.* ("Tort Immunity Act"). Finally, they argue that the claim should be dismissed on the ground that Padilla has failed to comply with the requirements of Illinois's Healing Art Malpractice Act, 735 Ill. Comp. Stat. 5/2-622. The Court will address each of these arguments below.

A. **Statute of Limitations**

Defendants argue that Count IV is barred by the one-year statute of limitations set forth under 745 Ill. Comp. Stat. 10/8-101(a). The statute of limitations is an affirmative defense that is typically unsuitable for consideration at the motion to dismiss stage. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). When a party raises the statute of limitations as an affirmative defense in a motion to dismiss, a court can dismiss a claim as untimely

5

only if there are no conceivable facts consistent with the complaint that could overcome the defense. *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). This is because a plaintiff's complaint "need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Accordingly, "questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney*, 782 F.3d at 928.

Here, the operative complaint describes events that took place in February 2014. 3d Am. Compl. ¶¶ 21, 38–40. Padilla waited until July 2015 to file his complaint, but even so, Count IV is not necessarily untimely. Based upon the limited record before it, the Court cannot say there are no conceivable facts consistent with the complaint that could overcome the statute of limitations defense. *See Sidney*, 782 F.3d at 928. Further development of the factual record could reveal, for example, that Padilla's delay in filing suit is excused by the doctrine of equitable estoppel or equitable tolling. *See Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003) (collecting cases); *see also Sanders v. JGWPT Holdings, Inc.*, No. 14 C 9188, 2016 WL 4009941, at *9 (N.D. Ill. July 26, 2016) (declining to dismiss claim at the pleading stage as barred by statute of limitations); *Sroga v. Decero*, No. 09 C 3286, 2010 WL 4705161, at *3 n.2 (N.D. Ill. Nov. 9, 2010) (same); *Turner v. City of Chi.*, No. 06 C 4786, 2007 WL 707546, at *2 (N.D. Ill. Mar.

6

5, 2007) (same). As such, the Court declines to dismiss Count IV on grounds of untimeliness at this stage.

### B. Illinois's Tort Immunity Act

Next, Defendants contend that the Tort Immunity Act grants them immunity from Padilla's negligence claim in Count IV. Padilla advances two theories in support of this claim: he alleges that Defendants negligently failed to protect him from other inmates and that the Supervisory Defendants negligently failed to provide him with adequate medical care. 3d Am. Compl. ¶¶ 75–76. Because Illinois law treats negligence claims based upon failure to protect differently from negligence claims based upon failure to provide medical care, the Court will address Padilla's two negligence theories separately.

#### 1. Negligent Failure to Protect

Defendants argue that § 4-103 of the Tort Immunity Act grants them immunity from liability for failure to protect Padilla from other inmates at the Jail. Section 4-103 provides that "[n]either a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein." 745 Ill. Comp. Stat. 10/4-103.

Illinois courts have interpreted § 4-103 as providing defendants with immunity from claims for negligent failure to protect inmates. *See Jefferson v. Sheahan*, 664 N.E.2d 212, 214–17 (Ill. 1996) (dismissing pretrial detainee's claim for negligent failure to protect because defendants were immune under § 4-103). The Seventh Circuit has recognized as much, and federal district courts have

routinely dismissed state law failure-to-protect claims on grounds of immunity under § 4-103. *See Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998); *Lipsey v. United States*, No. 12-2100, 2013 WL 757652, at *6 (C.D. Ill. Jan. 2, 2013) ("Local government entities often successfully invoke Section 4-103 in failure-to-protect cases."); *M.W. v. Doe 1*, No. 12 C 2461, 2012 WL 3717790, at *4 (N.D. Ill. Aug. 27, 2012) (dismissing claims with prejudice under § 4-103 where inmate brought negligence claims premised upon jail personnel's failure to protect him from abuse by other inmates).

Padilla argues that § 2-202 of the Tort Immunity Act nevertheless permits him to proceed under a failure-to-protect theory. Section 2-202 provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 Ill. Comp. Stat. 10/2-202. According to Padilla, § 2-202 carves out an exception to the immunity provided under § 4-103, permitting negligence claims to proceed against defendants who have engaged in willful and wanton conduct.

Unfortunately for Padilla, the Illinois Supreme Court has squarely rejected his argument. Section 2-202 provides a willful-and-wanton exception that is limited to the immunity set forth under § 2-202 itself; it does not provide a general willful-and-wanton exception to the immunities set forth in other sections of the Tort Immunity Act. *Ries v. City of Chi.*, 950 N.E.2d 631, 640–44 (Ill. 2011). As such, the immunity set forth under § 4-103 is not subject to any exception for willful and wanton conduct, and Illinois courts have made clear that no such exception may be

8

judicially created. *Jefferson*, 664 N.E.2d at 217; *see also Payne*, 161 F.3d at 1044 ("Illinois courts have held that the immunity afforded by § 4-103 was intended by the Illinois legislature to be absolute."). For these reasons, § 4-103 gives Defendants immunity from Padilla's claim for negligent failure to protect, and § 2-202 does nothing to salvage this claim.² Thus, to the extent Padilla brings a state law claim in Count IV premised upon Defendants' failure to protect Padilla from other inmates, the claim is dismissed with prejudice.

### 2. Negligent Failure to Provide Medical Care

Next, the Supervisory Defendants argue that § 4-105 of the Tort Immunity Act grants them immunity from liability for failure to provide Padilla with adequate medical care. Section 4-105 states that "[a] public employee is immune from liability for injury caused by his failure to provide medical care for a prisoner in his custody, but not when the employee engaged in willful and wanton conduct." 745 Ill. Comp. Stat. 10/4-105. In other words, § 4-105 provides jail personnel with immunity from claims for failure to provide medical care, but—unlike § 4-103—it contains an exception for willful and wanton conduct. Padilla contends that the Supervisory Defendants are not entitled to immunity under § 4-105 on the ground that their conduct falls within this willful-and-wanton exception.

---

² In support of his argument that § 2-202 creates an exception to § 4-103, Padilla cites *Torres v. City of Chicago*, 123 F. Supp. 2d 1130 (N.D. Ill. 2000). In that case, the court addressed a negligence claim based upon police officers' failure to summon medical care for a gunshot victim. *Id.* at 1131. The plaintiff had not brought a claim for failure to supervise or protect, and § 4-103 was not at issue. The Court therefore finds Padilla's reliance on *Torres* to be unpersuasive.

9

Under Illinois law, "[t]here is no separate and independent tort of willful and wanton conduct." *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. 2010) (citing *Ziarko v. Soo Line R.R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994)). Rather, a claim for willful and wanton conduct is "regarded as an aggravated form of negligence." *Id.* (citing *Sparks v. Starks*, 856 N.E.2d 575, 577–78 (Ill. 2006)). For purposes of the Tort Immunity Act, conduct is "willful and wanton" if it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 Ill. Comp. Stat. 10/1-210. The Seventh Circuit has recognized that the Tort Immunity Act's definition of willful and wanton conduct is virtually indistinguishable from the deliberate indifference standard that governs federal constitutional claims against jail personnel for failure to provide medical care. *See Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001).

Here, Padilla alleges that the Supervisory Defendants acted with deliberate indifference to his medical needs in setting policies that prevented him from receiving his prescribed pain medication and being timely transported to the Loyola Burn Center. 3d Am. Compl. ¶¶ 35–42, 67–72, 74. He thus alleges willful and wanton conduct sufficient to defeat a claim of immunity under § 4-105 at the motion to dismiss stage. *See Leato v. Dart*, No. 14 CV 454, 2016 WL 890741, at *3 (N.D. Ill. Mar. 9, 2016) (no immunity under § 4-105 where plaintiff alleged negligent failure to provide medical care that may have risen to the level of willful and wanton

conduct); *Kelderhouse v. Fox*, No. 05 C 4503, 2006 WL 2560855, at *4–5 (N.D. Ill. Aug. 31, 2006) (no immunity under § 4-105 for sheriff and correctional officers where plaintiff alleged wanton and willful conduct); *Thomas ex rel. Smith v. Cook Cnty. Sheriff*, 401 F. Supp. 2d 867, 876 (N.D. Ill. 2005) (no immunity under § 4-105 for defendants sued in their individual and official capacities where plaintiff alleged wanton and willful conduct); *Kruse v. Sheahan*, No. 04 C 6130, 2005 WL 1126549, at *2 (N.D. Ill. Apr. 21, 2005) (same). Dismissal of Count IV on grounds of immunity under § 4-105 is therefore unwarranted at this stage of the proceedings.

### C. Illinois's Healing Art Malpractice Act

To the extent Count IV brings a claim for negligent failure to provide medical care, Defendants argue that the claim should be dismissed because Padilla did not attach an affidavit to his complaint as required by Illinois's Healing Art Malpractice Act, 735 Ill. Comp. Stat. 5/2-622. In response, Padilla argues that § 2-622 is inapplicable because Count IV does not state a medical malpractice claim.

Section 2-622 applies in "any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." 735 Ill. Comp. Stat. 5/2-622(a). When § 2-622 applies, the plaintiff must file an affidavit along with the complaint, attesting that he has consulted with a qualified health care professional before filing suit. *Id.*; *see also Plummer v. Godinez*, No. 13 C 8253, 2015 WL 1013700, at *3 (N.D. Ill. Mar. 4, 2015) (summarizing the requirements of § 2-622). Failure to attach this affidavit is grounds for dismissal of a claim. 735 Ill. Comp. Stat. § 2-622(g). The Seventh Circuit has held that § 2-622 applies to state law

11

malpractice claims brought in federal court. *See Hahn v. Walsh*, 762 F.3d 617, 628–33 (7th Cir. 2014).

Here, Defendants' argument turns on whether Count IV brings a malpractice claim under the guise of an ordinary negligence claim. Section 2-622 requires attachment of an affidavit "even where a complaint does not allege medical malpractice on its face, if the determination at issue 'is inherently one of medical judgment.'" *Thomas*, 401 F. Supp. 2d at 877 (quoting *Lyon v. Hasbro Indus., Inc.*, 509 N.E.2d 702, 705 (Ill. App. Ct. 1987)). To make this assessment, Illinois courts consider factors such as: (1) whether determining the relevant standard of care would require "distinctively medical knowledge or principles"; (2) whether the conduct resulting in the plaintiff's injury was "inherently one of medical judgment"; and (3) whether medical expert testimony will be required to establish the standard of care. *Jackson v. Chi. Classic Janitorial & Cleaning Serv., Inc.*, 823 N.E.2d 1055, 1059–60 (Ill. App. Ct. 2005); *see also Washington v. Ill. Dep't of Corr.*, No. 13 C 5977, 2014 WL 2535115, at *3 (N.D. Ill. June 5, 2014) (applying these factors).

Padilla alleges that the Supervisory Defendants negligently failed to provide him with medical care by maintaining policies and customs under which Jail personnel refused to give Padilla his medication and timely transport him to the Loyola Burn Center as required by his doctor's orders. 3d Am. Compl. ¶¶ 67–69. At their core, these allegations accuse the Supervisory Defendants of setting policies that left room for Jail personnel to disregard straightforward orders from an outside medical professional; they do not suggest that the Supervisory Defendants or any

12

other Jail personnel were negligent in exercising their own medical judgment. Further, while it is possible that the parties may later seek to admit medical expert testimony, such testimony will not necessarily be required for a jury to determine the relevant standard of care or to find that the Supervisory Defendants were negligent in maintaining the alleged policies and customs. For these reasons, the Court concludes that Count IV does not bring a claim for medical malpractice falling within the scope of § 2-622. *Cf. Warren ex rel. Warren v. Dart*, No. 09-CV-3512, 2010 WL 4883923, at *11 (N.D. Ill. Nov. 24, 2010) (§ 2-622 applied to claims for negligent failure to provide medical care to the extent the claims were brought against nurses, but not to the extent they were brought against non-nurse defendants); *Thomas*, 401 F. Supp. 2d at 877 (§ 2-622 did not apply to wrongful death claim against jail personnel who had not exercised medical judgment); *Freeman v. Fairman*, 916 F. Supp. 786, 792 (N.D. Ill. 1996) (§ 2-622 did not apply to negligence claims against nonmedical jail personnel). As a result, § 2-622 does not apply and Padilla's complaint is not deficient for failing to include an attached affidavit. Padilla may therefore proceed with Count IV to the extent that it brings a negligence claim against the Supervisory Defendants for failure to provide medical care.

## II. Count V: State Law Respondeat Superior Liability

In Count V, Padilla brings a state law respondeat superior claim against the Supervisory Defendants, seeking to hold them liable for the tortious conduct of correctional officers Watson and Hunt. 3d Am. Compl. ¶¶ 79–81. The Supervisory

Defendants argue that this claim should be dismissed under § 2-204 of the Tort Immunity Act. They are correct.

Section 2-204 provides that "a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 Ill. Comp. Stat. 10/2-204. The Seventh Circuit has recognized that § 2-204 provides supervisory defendants with immunity from respondeat superior liability under state law. *See Payne*, 161 F.3d at 1044 (county sheriff was immune from respondeat superior liability under § 2-204); *see also Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1100 (N.D. Ill. 2007) (supervisory defendants were immune from respondeat superior liability under § 2-204 for state law claims brought by pretrial detainee). Because § 2-204 provides the Supervisory Defendants with immunity from respondeat superior liability, Count V is hereby dismissed with prejudice.

### III. Punitive Damages

Finally, Defendants have moved to dismiss Padilla's request for punitive damages in connection with his state law claims on the ground that punitive damages are precluded under § 2-102 of the Tort Immunity Act. Section 2-102 provides:

> Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

14

745 Ill. Comp. Stat. 10/2-102. Thus, to invoke immunity from liability for punitive damages under § 2-102, a defendant must be either (1) "a local public entity" or (2) a "public official [ ] serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity." *Id.*

Here, Padilla has sued Sheriffs of Kane County Perez and Kramer, Directors of Corrections Hunger and Lewis, and correctional officers Hunt and Watson. These Defendants clearly are not "local public entities" under the Tort Immunity Act.[3] What is less clear, however, is whether Defendants are public officials serving in an official executive, legislative, quasi-legislative, or quasi-judicial capacity within the meaning of § 2-102. That said, Defendants have made no attempt to argue that they are indeed such public officials and have cited no authority speaking to this issue. Therefore, Defendants have not satisfied their burden to persuade the Court that Padilla's request for punitive damages should be dismissed at this juncture. *Cf. Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1029 (N.D. Ill. 2003) (declining to strike request for punitive damages under § 2-102 at the motion to dismiss stage given the paucity of case law on this issue and the absence of developed arguments in the parties' briefs); *Doe ex rel. Doe v. White*, 627 F. Supp. 2d

---

[3] Under the Tort Immunity Act, "'[l]ocal public entity' includes a county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, trustees of schools of townships, treasurers of schools of townships, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, emergency telephone system board, and all other local governmental bodies. . . . It does not include the State or any office, officer, department, division, bureau, board, commission, university or similar agency of the State." 745 Ill. Comp. Stat. 10/1-206.

15

905, 911 (C.D. Ill. 2009) (same).  Defendants' motion to dismiss Padilla's request for punitive damages in connection with his state law claims is accordingly denied.

## Conclusion

For the reasons stated herein, Defendants' motion to dismiss [93] is granted in part and denied in part.  To the extent Count IV brings a claim for state law negligence based upon Defendants' failure to protect Padilla from other inmates, that portion of Count IV is dismissed with prejudice.  Count V is also dismissed with prejudice.  In all other respects, Defendants' motion to dismiss is denied.

**IT IS SO ORDERED.**                    ENTERED    1/24/17

                                                                    _____
**John Z. Lee**
**United States District Judge**